INDEPENDENCE SAVINGS BANK, *ET AL.,* PLAINTIFFS-RESPONDENTS, v. 290 MADISON CORPORATION, *ET AL.,* DEFENDANTS-APPELLANTS, AND JAMES AND HELEN DELANEY, T/A 290 MADISON CORP., PLAINTIFFS-APPELLANTS, v. THE BOARD OF COMMISSIONERS OF THE CITY OF ORANGE *ET AL.,* DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 26, 1979—Decided April 6, 1979.

474

Before Judges CONFORD, PRESSLER and KING.

*Mr. Anthony M. Mahoney* argued the cause for appellants 290 Madison Avenue Corporation and James and Helen Delaney, t/a 290 Madison Corp. (*Messrs. Bernstein & Mahoney,* attorneys; (*Mr. Dennis M. Mahoney* on the brief).

*Mr. Oliver R. Kovacs* argued the cause for plaintiff-respondent Independence Savings Bank (*Messrs. Kovacs, Anderson, Horowitz & Rader,* attorneys).

*Mr. Francis J. Dooley* argued the cause for defendant-respondent Board of Commissioners of the City of Orange.

*Mr. Alfonso C. Viscione* argued the cause for defendant-respondent Rent Leveling Board of the City of Orange.

PER CURIAM. Judgment was entered in the Chancery Division against James Delaney and Helen Delaney (the

Delaneys) in a foreclosure action by plaintiff Independence Savings Bank (bank). Consolidated for trial with that action were a prerogative writ action and a declaratory judgment action brought by the Delaneys against the City of Orange and the Orange Rent Leveling Board. In the latter actions the Delaneys charged that certain resolutions by the latter two bodies in respect of rentals at a multi-unit apartment house owned by the Delaneys and heavily mortgaged to the bank were invalid. Damages in the nature of condemnation were sought against these public bodies because, so the Delaneys charged, they lost the property by foreclosure as a result of the curtailment of rental income consequent upon the illegal actions of the governing body of the city and the rent board.

Insofar as the controversy between the Delaneys and the bank is concerned, the Delaneys assert they had a binding agreement with the bank at a certain point in the state of default on the mortgage that the bank would not foreclose so long as all subsequent income from the property would be devoted either to operating expenses or to demands of the city and the rent board to make specified repairs to the property and provide specified services to the tenants — an agreement they say they kept. The trial judge found there was no such agreement and held the bank entitled to foreclose. We find the judge's determination adequately supported by the evidence and affirm the judgment to that extent.

As to the actions of the rent board and the city, the trial judge found for the Delaneys in part and against them in part. We need not discuss the merits of these rulings as they are moot unless the Delaneys' claim for damages against the public bodies is sustainable — a proposition we shall reject hereinafter. The Delaneys concede they cannot, as a practical matter, ever hope to recover from their former tenants such additional amounts of rent as would be theoretically due if the rent rulings adverse to the Delaneys were now to be

reversed. They conceded at oral argument they do not intend to pursue any such claims.

We address the question of liability of the public bodies. The trial judge held there was no cause of action. The Delaneys argue that the illegal actions of those entities amounted to a constructive condemnation of their apartment house for which they should be awarded in damages the difference between the fair value of the property before and after the complained of resolutions of the municipal agencies. These consisted of denials of rent increases and a tax surcharge and of a $20 per tenant rollback in rents, later rescinded. For present purposes we will accept, *arguendo*, the validity of the attack upon the municipal actions. We conclude that there is no cause of action for constructive or inverse condemnation on these facts.

The Delaneys rely on *Washington Market Enterprises v. Trenton*, 68 *N. J.* 107 (1975). We find the decision inapposite. Apart from all the other differences in the nature of the respective governmental actions involved, the *Washington Market* case allowed a claim against the municipality only to the extent that the property owner could establish "substantial destruction" of the value of the property and that the city's activities played a substantial part in bringing that result about. *Id.* at 123. In the present instance the fee value of the property has not been substantially destroyed but only reduced. The Delaneys cannot come within the *Washington Market* principle merely because their thin equity in the heavily mortgaged property has been destroyed. We put to one side the question of the degree to which the Delaneys' own fault in undermaintaining the property contributed to their loss of the property.

Where there has not been a taking of private property, any incidental injury to property consequent upon the operations of government, including those of duly constituted regulatory bodies, is *damnum absque injuria*. *Washington Market Enterprises v. Trenton, supra*, 68 *N. J.* at 117. This we find to be the case here. It does not matter

that the regulations of rent control agencies may, in some situations, offend the principle that rents may not be kept below the level needed to afford the landowner a fair return. *Helmsley v. Fort Lee,* 78 *N. J.* 200 (1978). The only legal redress therefor is the process of judicial review and such remedial relief as to the rent structure as may be afforded pursuant thereto. *Cf. N. J. S. A.* 59:2–3(a) and (b).

Judgment affirmed.